h COOKS, J.,
Dissents:
I agree with the majority’s conclusion that the jury correctly found B.R. was “improperly touched” while under the care and supervision of Little Britches. However, I can find no reasonable basis in the record for the jury’s conclusion that B.R. did not suffer any injury as a result of the incidents at Little Britches.
The majority correctly notes Little Britches’ policy did not permit three children in the restroom at a time and required that an attendant accompany the children and wait for them to exit the partially opened door. But, Sherry White (who interviewed all the parties involved in this matter for the Office of Community Services) testified Marcia Menard advised her the children often escorted each other to the bathroom without an attendant. Mrs. White testified she discovered ample evidence to support the lack of supervision complaint filed against Little Britches. The record further established Little Britches has received 88 citations for deficiencies since 1994.
The majority relies heavily on Dr. Brennan’s testimony in affirming the jury’s no injury finding. Dr. Brennan chose not to examine B.R. and admitted she was not prepared to render an opinion on the validity of his claim. She also agreed Dr. LeCorgne was in a better position to evaluate B.R.
The majority further notes no evidence was presented to show J.M. or B.R.’s cousin suffered trauma in connection with sexual touchings they allegedly experienced. J.M. and B.R.’s cousin were not parties to this suit; and the impact of the touching *96 on their physical and emotional well being was not at issue nor material in this case.
Obviously in an effort to lessen the weight of Dr. LeCorgne’s testimony, the majority states he “casually testified about an incident where B.R. stuck his finger up his cousin’s anus.” Perhaps the majority momentarily forgot just a few paragraphs prior they wrote “Dr. LeCorgne focused in particular on B.R.’s subsequent attempts lato sexually touch a cousin.” Dr. LeC-orgne testified the incident with B.R.’s cousin represented a “passing of the torch” and was a very strong indicator that the sexual acts B.R. described actually occurred. The majority also implies that Dr. LeCorgne’s testimony was motivated by a “pecuniary interest.” Nothing in the record remotely supports the majority’s sly attempt to undermine the Doctor’s testimony by questioning his professional ethics.
The majority, again by implication, vil-lainizes B.R.’s father suggesting somehow his reaction when B.R. told him of the improper touching caused the child’s injury, not the sexual encounters at the day care center. Dr. LeCorgne testified the father’s actions were a “normal” reaction by a parent when first informed that his or her child had been sexually abused.
Still struggling to justify the jury’s failure to award damages in this case, the majority suggests the jury answered yes to Interrogatory 1 concluding only that Blaine was “struck” in a friendly way by other kids while playing in the yard or classroom at the day care center. Such a finding is unreasonable considering the bulk of the testimony concerned the alleged sexual encounters and the resulting harm caused B.R.. The evidence amply supports the more reasonable conclusion that the jury by responding yes to this Interrogatory found B.R. was “improperly touched” while in the care and supervision of Little Britches.
I strongly disagree with the majority’s conclusion that the jury could have “reasonably found that what occurred between these toddler’s was normal and innocent child’s flay.” (Emphasis mine.) I can only conclude the majority viewed the activity that occurred here as simple anatomical exploration, or, as Dr. Brennan characterized it, “you show me your’s and I’ll show you mine” stage. However, the conduct alleged here goes well beyond simple anatomical exploration. B.R. stated sticks were inserted in his anus and the boys inserted their penises in his mouth. I I,-¡doubt that any parent, whose child had been similarly touched, would openly declare such acts normal or innocent child’s play. Dr. LeCorgne, when questioned as to whether the acts B.R. was subjected to qualified as inappropriate touching, stated:
Q. Doctor, we have been searching for some terminology throughout this case. My next question is terminology as well, and that is this. We have terms of abuse and molestation, etc., and I want to know if your term for the conduct that information has led you to testify about, you would characterize that as inappropriate touching?
A. Yes, Sir. It was certainly inappropriate touching and in my way of trying to reconcile all of this was to suggest that, rather than worry about what we’re calling this, I’m very clear and confident in the fact that I’m dealing with observable consequences and sequel behavior in a young boy’s life, so I’m not really concerned about what it has been called because it has had a demonstrative or observable impact on his life. So, in terms of consequences, you can call it anything.
Q. Well, I just want to make sure that when you talked about it earlier, that term would still apply because terminology is sometimes important. Didn’t you describe what happened to B.R. as, quoting here, “inappropriate sexual activity, sex play?”
A. Yes, Sir. I think I would amend that word “play” because sex play is more in the category of: I’ll show you mine if *97 you show me yours. And I think that young children experiencing sexual curiosity might play in that way, and I don’t know if I would consider the unwanted insertion of a digit into one’s anus as playful.
Dr. LeCorgne confirmed B.R. exhibited the classic signs of having been sexually abused. Although B.R. has progressed well, Dr. LeCorgne testified it is imperative that he receive future counseling.
I respectfully dissent from the majority’s finding that B.R. was not injured as a result of the “improper touching” the jury found in fact occurred.